# EX PARTE SELMA & GULF RAILROAD CO.

### [APPLICATION FOR MANDAMUS.]

1. *Act to loan three per cent. fund, &c.; is still of force.*—The act of the general assembly of this State, entitled, "An act to *loan* and *appropriate* the three per cent. fund and its interest," approved, February 18, 1860, is a constitutional law.—Pamph. Acts, 1859, 1860, p. 54, Act No. 68.

2. *Three per cent. fund; is a trust fund.*—The "three per cent. fund" does not belong to the State. It is given by the congress of the union to the State, in trust for the purposes named in the gift; that is, for the purpose of making "public roads, canals, and improving the navigation of rivers," in this State.—Act of Congress, March 2, 1819; Clay's Digest, pp. xxii, xliv.

3. *Same.*—The act of February 18, 1860, above referred to, grants a *loan* and *appropriation* of the sum of forty thousand dollars to the Selma & Gulf Railroad Company, and to which said company is entitled upon complying with the requirements of said act.

4. *Same; what does not forfeit right of company to apply for loan of.*—When it appears that any of the railroad companies, to which *loans* and *appropriations* of said "three per cent. fund" are granted by the second section of said act, applied for the same within six months after the passage of said act, and in the manner prescribed therein, and that such *loan* and *appropriation* was postponed by the governor, a subsequent application may be made in renewal and continuation of the first application, which was so postponed. Such postponement does not forfeit the right to the *loan* and *appropriation* granted under the act.

5. *Same; application for, to whom may be made.*—And an application so made in renewal and continuation of such first application, made within the six months after the passage of said act, and postponed, does not come too late, if made to the governor of this State, elected and inducted into office under the present constitution of this State.

6. *Same; action of governor in respect to; when will not be controlled by court.*—The duties devolved upon the governor by said act are to be performed by him, under the law, in his own way. The performance of his duties is not to be controlled by this court or any other, when he acts under authority of law. Of such things, he is the sole judge, in the executive branch of the State government.

7. *Same; warrant given in payment of loan of; when only treasurer can refuse payment of.*—Upon the issuance or drawing of the "warrants," as authorized by said act, to the party entitled to the same, unless there is fraud, the warrants, so issued or drawn, give a right to the company in whose favor they are drawn, to the amounts therein named, upon the treasury of the State, which, upon proper application, the treasurer

can not refuse to pay, unless there is a deficiency of funds in the treasury for that purpose.  Such right will be enforced by *mandamus*.

At its February term, 1871, the city court of Montgomery overruled and refused the prayer of the Selma & Gulf Railroad Company for a *mandamus* to compel the treasurer of the State of Alabama to pay to petitioner a warrant, drawn in its favor by the auditor, for the sum of $40,000, under an act entitled "An act to loan and appropriate the three per cent. fund and its interest," approved, February 18th, 1860, and the said petitioner excepted to the decision, took a bill of exceptions, &c., and now renews the application in this court.

The petition alleges the corporate existence of the petitioner, &c.; recites the act of February 18th, 1860, entitled "An act to loan and appropriate the three per cent. fund and its interest," and various other acts of the legislature in relation thereto.  By section two of said act, which loans out the three per cent. fund, it is enacted, that "the sum of $40,000 of the same fund (the three per cent. fund) be loaned to the Selma & Gulf Railroad Company." The third section provides that loans shall be for the term of five years, and the amount of interest, &c., on the loan, six per cent.  The 9th section, after referring to the terms and conditions of the act of February 17th, 1854, provides that the companies to whom any of the three per cent. fund has been loaned, upon complying with the conditions, &c. prescribed by the act of February 17th, 1854, shall receive from the Governor a warrant for the proper amount on the comptroller, (now auditor,) who shall draw his warrant therefor on the treasurer, who shall pay the same "out of the monies in the treasury not otherwise appropriated," &c.  The 18th section of the act provides, in effect, that on the failure of any of the companies to whom the three per cent. has been loaned, to apply for the same within six months, and comply with the requirements prescribed by the act, it shall not be entitled to the loan, but the same shall be divided *pro rata* among the other companies mentioned in the second section of the act, &c.

The 14th section of the act provides, in substance, that

Ex parte Selma & Gulf Railroad Company.

whenever there are not sufficient funds in the treasury, not otherwise appropriated, &c., to satisfy the loans and appropriations made by the act, the governor shall have power to postpone such loan and appropriations until the amount in the treasury, not required to meet other appropriations, shall be sufficient to pay the same.

The petition further states facts, which show that within six months after the passage of the act the petitioner applied for the loan, being prepared and offering to comply with all the requirements of the act and conditions precedent to receiving the loan, but A. B. Moore, the then governor, under the power vested in him by the act, postponed the payment of the loan.

In November, 1871, the petitioner made another application for the loan to Wm. H. Smith, then governor of Alabama, and "gave bond and mortgage, and security satisfactory to the governor," and obtained from him his warrant on the treasurer in favor of petitioner for said sum of $40,000 The treasurer, on presentation of the warrant, declined to recognize its validity, and refused to pay the same, and informed petitioner that he would not pay said warrant, although he might have funds in the treasury, not otherwise appropriated, sufficient to pay the same.

The answer of the treasurer alleges, in substance, that the time during which any portion of the money loaned by this act could be paid, had long since expired, to-wit, on the 18th day of August, 1865, and that there was now no authority for paying the loan; that the postponement by Gov. Moore was not made in accordance with law, and did not give petitioner any right to apply for said loan now.

ALEXANDER WHITE, and E. W. PETTUS, *pro* motion.
ATTORNEY-GENERAL SANFORD, *contra*.

PETERS, J.—By an act of the congress of the United States, passed on March 2d, 1819, entitled "An act to enable the people of Alabama territory to form a constitution and State government, and admission of such State into the union on an equal footing with the original States," *four*

28

propositions were submitted to the convention to be called to form said constitution and State government, for their "free acceptance or rejection," and if accepted by the convention, to be obligatory on the United States. Each of these propositions were accepted. The third was in these words:

"That *five per cent.* of the net proceeds of lands lying within the said territory, and which shall be sold by congress, from and after the first day of September, in the year one thousand eight hundred and nineteen, after deducting all expenses incident to the same, shall be reserved for making public roads, canals, and improving the navigation of rivers, of which *three-fifths* shall be applied to those objects within said State, under the direction of the legislature thereof, and *two-fifths* to the making of a road or roads leading to said State, under the direction of congress."—Clay's Dig. pp. xxii, xxiii, xxiv; *ib.* p xlii, *ordinance;* Code of Ala. pp. 51, 52, § 3; *ib.* p. 47, *ordinance.* The funds raised and paid to the State under this "proposition" have been called in our statute laws, "the three per cent. fund," and "the two per cent. fund." By further act of congress, approved September 4th, 1841, the two per cent. fund was relinquished by congress to the State, and accepted by the State, upon the terms proposed by the national government.—Pamphlet Acts, 1841, 1842, p. ——. And up to January 1st, 1860, the State had received of the three per cent. fund the sum of eight hundred and fifty-eight thousand four hundred and ninety-eight dollars, ($858,498.00,) principal and interest. And of this fund, so received, there then remained unappropriated the sum of one hundred and ninety-five thousand three hundred and sixty-two dollars and ninety-one cents, ($195,362.91.)—Pamphlet Acts, 1859, 1860, Act No. 68, § 1, p. 54; Report of joint select committee to general assembly of Alabama, January 17th, 1860, *passim.* On the 18th day of February, 1860, after acting on the report above cited, a law was passed by the general assembly of this State, entitled "An act to loan and appropriate the three per cent. fund and its interest."—Pamph. Acts, 1859,

1860, p. 54, No. 66. By this act this fund was *loaned* and *appropriated* as therein designated and prescribed. Omitting the enacting clause, I quote below the first and second sections of this law, of February 18th, 1860, as follows :

"SEC. 1. That the sum of eight hundred and fifty-eight thousand, four hundred and ninety-eight dollars is hereby declared to be the amount due as *principal* and *interest* from the State to the three per cent. fund, of which sum one hundred and ninety-five thousand, three hundred and sixty-three dollars is the balance due as a loan to the Tennessee and Coosa Railroad Company, under an act approved 17th February, 1854. Said loan is ratified as prescribed in said act, and the balance of said three per cent. fund, amounting to six hundred and sixty-three thousand, one hundred and thirty-five dollars, is *loaned* and *appropriated* as hereinafter enacted."

"SEC. 2. That the sum of two hundred and eighteen thousand dollars of said fund be loaned to the North-east and South-west Alabama Railroad Company; that the sum of seventy-five thousand dollars of the same fund be loaned to the Wills Valley Railroad Company; that the sum of two hundred and twenty-five thousand dollars of the same fund be loaned to the Alabama and Tennessee Rivers Railroad Company ; *that the sum of forty thousand dollars* of the same fund be loaned to the *Selma and Gulf Railroad Company;* that the sum of twenty-five thousand dollars of the same fund be loaned to the Cahaba, Warrior, and Greensboro Railroad Company ; that the sum of fifty thousand dollars of the same fund be loaned to the Opelika and Oxford Railroad Company ; and the sum of thirty thousand dollars of the same fund be loaned to the Montgomery and Eufaula Railroad Company, all on the same terms and with the stipulation and conditions hereinafter prescribed."— Pamph. Acts 1859–60, No 68, p. 54.

The language of this statute is too plain for doubt or misconstruction. The intent is strongly and emphatically expressed, and the law actually "*loans* and *appropriates*" the fund therein named to the parties mentioned. This is a trust fund, and the State is the trustee, and it is bound

in good faith to pay the interest on it, or to loan it out, or invest it, as the terms of the gift require. The liability to pay interest is acknowledged in the words which describe the debt, as is shown in the first section of the act above quoted. It is also acknowledged by the general assembly in the act approved on 2d February, 1839, in making an appropriation out of the "interest of the three per cent. fund" for the improvement of Elk river, in this State.— Pamph. Acts 1839, p. —. The loans thus granted were to continue for five years, bearing interest at the rate of six per cent. per annum, payable semi-annually at the treasury of the State. The parties accepting the same, before the money could be paid over to them, were required to execute a bond to the State in double the amount of the sum to be received, in each case, conditioned as required by the act, and to be secured, to the satisfaction of the governor, by mortgage or deed of trust, and such other security as the governor in his discretion shall require, if in any case he shall deem other security necessary and proper.—Pamph. Acts 1859–60, No. 68, §§ 3, 4, p. 54.

The ninth section of said last named statute also enacts, "that when any of the railroad companies named in this act shall comply with the terms and conditions of this act, or the act of February 17th, 1854, relating to said companies respectively, and made conditions precedent to the loan or payment of money, as the case may be, the governor of the State shall draw his warrant in favor of the proper party for the amount, on the comptroller, who shall draw his warrant for the same upon the treasurer of the State, which warrant shall be paid by the treasurer out of the moneys in the treasury not otherwise appropriated, and charge to account of the three per cent. fund."—Pamph. Acts 1859–60, No. 68, § 9, p. 54. There are two other sections of this law proper to be noticed in this discussion. The first of these is section fourteen, and I cite so much of it as applies to this case :

"In case it shall appear that the funds in the treasury, not otherwise appropriated and required to meet other appropriations, shall be insufficient to satisfy the loans and

appropriations authorized by this act, at the time the same shall be applied for, the governor shall have power to direct the amount in the treasury not required to meet other appropriations, to be distributed *pro rata* among such of said companies as shall apply for the loans and appropriations authorized by this act, and the *balance* of such loans and appropriations shall be postponed *until* the amount in the treasury not required to meet other appropriations shall be sufficient to satisfy the same."

And the other section referred to is in these words :

" That if any of the companies mentioned in the second section of this act shall fail for *six months* from the passage of this act, to apply for the loan therein prescribed, and to comply with the requirements prescribed in this act, the amount so proposed to be loaned such company shall be loaned *pro rata* to the other companies mentioned in the second section of this act, or to such of them as may apply therefor, upon the same terms and conditions as are prescribed in the third and fourth sections of this act ; *Provided,* said companies shall apply for the same within eight months from the passage of this act."— Pamph. Acts 1859–60, p. 54, No. 68, §§ 14, 18.

From these sections it very clearly appears that the governor was clothed with power to postpone these loans, or any one of them, if there were not funds unappropriated to pay them when applied for, and that the applications for these loans were required to be made within six months after the 18th day of February, 1860, the date of the passage of the act.   This seems to me the most rational construction of the language of the statute.   The legislature doubtless intended to close the operations under this law in five years and six months with the companies which did not fail to avail themselves of the benefits of the loans, or within five years and eight months after the date of the act, as to those loans that were permitted to lapse and were not taken by the companies named in the first instance.   Two months longer were allowed to dispose of such loans as failed to be appropriated under the first offer. . But the governor was permitted to prolong this pe-

riod by postponing such loans as there might happen to
be no funds unappropriated in the treasury to meet, when
applied for. In this way the operation of the law might
be extended until funds to meet the loan proposed accu-
mulated in the treasury. This statute has never been re-
pealed, suspended or modified. Its purpose has not been
accomplished. It can not be repealed by *non-user*. It
must therefore still be in force.— *White v. Boot*, 2 T. R.
375. Very evidently, its purpose, so far as the applicant in
this case is concerned, is not accomplished. That it has
been postponed, is not the applicant's fault. This is the
view, doubtless, that his excellency, the late governor of
this State, took of the enactment. I think it the correct
one. If the law was in force when the governor acted,
clearly he was authorized to perform the duty it devolved
upon him. The petitioner had not forfeited its rights or
failed to comply with the requisitions of the law within the
period prescribed and in the manner prescribed. The
postponement of the loan in the first instance, the inter-
vention of the rebellion and overthrow of the lawful gov-
ernment of the State, and want of funds in the treasury,
necessarily extended the period in which it was possible to
complete the arrangements for the loan granted by the
act. This was the question left to the governor, whether
the time for the loan had expired or not. He has decided
that it had not, and that there were sufficient funds in the
treasury subject to the loan. It is not for this court, or
any other, to review his acts. In such a case, his jurisdic-
tion is paramount to that of this tribunal. He was
charged by law with a duty, and he has performed it.
This court, it seems to me, can only interfere when the
chief executive acts without sanction of law. In this case
there can be no question as to the constitutional validity
of the law. It is merely an act regulating a trust fund,
over which the general assembly had undoubted control.
Act of Congress, March 2, 1819, *supra.* The law had not
failed either by *non-user*, express limitation, or by limita-
tion reasonably to be inferred from its purpose or its lan-
guage. The funds " loaned and appropriated " are not the

property of the State, or such as the State may legally confiscate or divert to its own use. They are wholly trust funds, and should be dealt with as such, loaned out and increased as much as possible, until applied to the very important uses for which they were given by the government of the Union to the State ; that is, to the aid of such works of internal improvement as are named in the gift. Act of Congress, March 2, 1819, *supra.*

Here the application for *mandamus* shows that the petitioner is the railroad company to which the grant of the loan was made, out of certain trust funds called the "three per cent. fund," to the amount of forty thousand dollars ; that this loan was accepted and applied for by the company, in the proper way, and within the proper time ; that the same was postponed by the governor, under authority given him by the act. In such a case, this court will take notice of the intervention of the late war and the overthrow of the lawful government of the State during the late rebellion, and that the loan was necessarily postponed during this period ; and that the application in renewal of the former application made at first, was made in reasonable time after the restoration of the rightful government of the State. The petitioner also shows, that upon the renewal of the application for the benefit of the loan granted the petitioner, the governor drew his warrant on the proper officer for the amount of money loaned of the three per cent. fund ; that this officer was the auditor of the State, and that the auditor drew his warrant, in conformity with the warrant of the governor and the requisitions of the law, upon the treasurer of the State for the amount loaned, and this warrant of the auditor the treasurer refused to pay. From what has already been shown, I think in this the treasurer misapprehends the law, though at the same time his vigilance and caution are to be most highly commended.

Let a rule *nisi* issue as asked by petitioner, returnable *instanter* into this court, during the present term, requiring, &c.